UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DESHON STREETER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:25-cv-699-EGL |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| *Commissioner of* | ) | |
| *Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Deshon Streeter seeks judicial review of the Commissioner of Social Security's denial of his application for supplemental security income. Streeter argues that substantial evidence does not support the Administrative Law Judge's (ALJ) decision, and that the ALJ failed to apply the proper legal standard for evaluating his subjective pain testimony. After careful review of the administrative record and the parties' briefs, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

### A. Procedural Background

Streeter applied for supplemental security income, alleging disability beginning on January 10, 2022. Doc. 9-3 at 11. The agency denied his claim after an initial assessment, after reconsideration, and on May 21, 2024, after a hearing before an ALJ. *Id.*

On March 19, 2025, the Appeals Council denied Streeter's request for review of the ALJ's decision, rendering it final. *Id.* at 2; *see also* 20 C.F.R. §§ 404.981, 416.1580, 422.210(a).

Streeter exhausted his administrative remedies and timely filed this action. The Court therefore has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background

Streeter alleges that his disability began on January 10, 2022, based on a herniated disk in his spine and pain from a broken ankle. Doc. 9-8 at 4-10. He was forty-five years old on that date, and he has a high school degree, two years of college education, and past work at Taco Bell, Labor Finders, and Smooth Cuts, and as a barber and dishwasher. *Id.* at 11-14; Doc. 9-3 at 60.

## ALJ DECISION

To determine whether a claimant is disabled, an ALJ applies a five-step sequential evaluation process. In the following order, the ALJ considers whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals the severity of a listed impairment; (4) can perform any past relevant work; and, if not, (5) can adjust to other work that exists in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, the ALJ found at step one that Streeter had not engaged in substantial gainful activity since January 19, 2022, the date of his application. Doc 9-3 at 13; Doc. 9-7 at 22-23. At step two, the ALJ determined that Streeter had the following severe impairments: hypertension, diabetes mellitus type 2 with neuropathy, lumbar degenerative disc disease, chronic pain syndrome and obesity. Doc. 9-3 at 13.

At step three, the ALJ concluded that none of Streeter's impairments, alone or in combination, met or medically equaled a listed impairment. *Id.* at 15-16. The ALJ then assessed Streeter's residual functional capacity (RFC) and found that he could perform a modified range of light work. *Id.* at 17. Specifically, Streeter could occasionally climb ramps and stairs but should avoid climbing ropes, ladders, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; could endure occasional exposure to extreme temperatures, wetness, humidity, and vibration. *Id.* And he can have occasional exposure to pulmonary irritants such as fumes, odors, dusts, gasses, and poorly ventilated areas. *Id.*

At step four, the ALJ found that Streeter had past relevant work as a dishwasher and barber but found that he could not perform this work based on his RFC. *Id.* at 22-23. At Step 5, the ALJ relied on vocational-expert testimony to find that Streeter could perform other jobs existing in significant numbers in the national economy, including routing clerk, marker, and inspector/hand packager. *Id.* at 23-24.

Based on these findings, the ALJ concluded that Streeter had not been disabled under the Social Security Act since January 19, 2022. *Id.* at 24.

## STANDARD OF REVIEW

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

"[W]hatever the meaning of 'substantial' in other contexts," in the context of judicial review of social security decisions, the threshold "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019). Substantial evidence exists where there is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). If that standard is met, the Court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted).

**DISCUSSION**

Streeter seeks reversal and remand, arguing that substantial evidence does not support the ALJ's RFC determination and that the ALJ failed to apply the proper legal standards for evaluating his subjective testimony of pain. Doc. 13 at 5.

Having carefully considered the record and briefing, the Court concludes that the ALJ's decision was supported by substantial evidence and based on an application of proper legal standards.

**I.    Pain Standard**

When a claimant seeks to establish disability through his own testimony about pain or other subjective symptoms, the Eleventh Circuit's multi-step "pain standard" applies to review of his claim. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The claimant must show (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain resulting from the condition, or (3) that the objectively determined medical condition could reasonably be expected to produce the alleged symptoms. *Id.*; *see also Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024); 20 C.F.R. § 416.929.

Once that threshold is met, the ALJ must evaluate the claimant's statements about the intensity, persistence, and limiting effects of his symptoms and assess those statements against the objective medical evidence and the record as a whole. 20 C.F.R. § 416.929(c)(4); *see also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d

1302, 1307 (11th Cir. 2018). In doing so, the ALJ must consider all relevant evidence, including the nature of the claimant's symptoms; precipitating and aggravating factors; daily activities; the type, dosage, and effects of medications; and the treatment or measures used to relieve symptoms. 20 C.F.R. § 416.929.

If the ALJ finds a claimant's subjective testimony not fully credible, the ALJ must articulate explicit and adequate reasons for that determination. *Wilson*, 284 F.3d at 1225; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A clearly articulated credibility finding supported by substantial evidence will not be disturbed on review. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The question is not whether the ALJ could have reasonably credited the claimant's testimony, but whether the ALJ was clearly wrong to discredit it. *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ applied the pain standard and found that although Streeter had severe impairments that could reasonably be expected to cause some of his symptoms, his allegations of disabling intensity, persistence, and limiting effects were inconsistent with the objective medical evidence in the record as a whole. Doc. 9-3 at 22.

Substantial evidence supports that finding. No treating or examining physician opined that Streeter was disabled or unable to work. *See generally* Docs. 9-9, 9-10. His conditions were managed conservatively with physical therapy,

injections, and over-the-counter medications, which often proved effective. Doc. 9-3 at 56; Doc. 9-9 at 65, 92, 95, 103, 115, 126, 129, 140, 150-51, 154, 161, 166, 184-85. Lumbar imaging showed only moderate degenerative changes and disc disease, with no acute fractures. Doc. 9-9 at 8, 177. When Streeter complied with treatment, his hypertension and diabetes were generally well controlled. Doc. 9-9 at 51, 151; Doc. 9-10 at 63. His diabetes involved only modest A1c elevations, without organ damage or insulin dependence. Doc. 9-9 at 45, 51, 73-74; Doc. 9-10 at 63, 72.

The ALJ also reasonably relied on Streeter's functional abilities. Although Streeter alleged the occasional need for a cane, it was neither prescribed nor shown to be medically necessary. Doc. 9-3 at 57; *see generally* Docs. 9-8; 9-9.[1] He could frequently drive, shop independently, prepare meals, perform home exercises learned in physical therapy, and previously reported completing household chores. Doc. 9-8 at 21-22, 29-30, 37-38, 70-71, 73; Doc. 9-9 at 96, 109, 166, 169, 171, 184-85; Doc. 9-10 at 63. Consistent with this record, state agency physicians concluded that Streeter retained the capacity to perform a reduced range of light work. Doc. 9-4 at 5-6, 16-18.

The ALJ further identified specific inconsistencies between Streeter's testimony and the record. Although Streeter broadly asserted that his symptoms

---

[1] Although Streeter was instructed to purchase a cane over the counter, Doc. 9-9 at 154, this appears to have been a response to his direct request for a cane, rather than a product of the treating physician's independent initiative. *See id.* at 151.

7

prevented ordinary activity, Doc. 9-3 at 56, he reported during an August 2023 psychological consultative examination that he could drive his fiancé to work, perform exercises at home he learned in physical therapy, prepare his own meals, and independently complete daily activities, including household chores. Doc. 9-9 at 184-85.

The ALJ acknowledged that Streeter had medically determinable abnormalities that imposed some functional limits. Doc. 9-2 at 22. But he concluded that the record did not reflect any intractable condition that would prevent him from performing a reduced range of light work activity for a continuous twelve-month period. *Id.* The ALJ therefore reasonably determined that Streeter's treatment history did not substantiate the degree of severity he alleged.

Streeter argues otherwise. He contends that the ALJ overlooked substantial portions of the record and improperly discounted his repeated complaints of persistent and worsening lower back pain. Doc. 13 at 8-9. He further asserts that the ALJ failed to consider his inability to afford certain treatments, thereby narrowing the objective medical evidence available to support his claims. *Id.* at 11-12. And he maintains that the ALJ selectively relied on evidence of his daily activities while ignoring his descriptions of the limitations accompanying those activities. *Id.* at 12. From this, Streeter concludes that no reasonable person could find that he retained

the capacity to perform even a reduced range of light work. *Id.* at 13-14 (citing *Crawford*, 363 F.3d at 1158).

Those arguments fail. First, any contention that the ALJ erred by failing to consider Streeter's financial resources, and, by extension, his access to medical care, is not properly before the Court. Streeter never raised that issue before the ALJ, and the record contains no developed argument on that point. *Cf. Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("For an issue to be adequately raised in the opening brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority."). Unsurprisingly, Streeter identifies no evidence in the record establishing that cost constrained his treatment options. *See* Doc. 13 at 11-12. Instead, he invites speculation about why he sought care at Cooper Green Hospital and why he failed to follow up with certain specialists. *Id.* Such speculation is inappropriate, and the Court declines that invitation.

Second, the ALJ did not ignore Streeter's allegations concerning the persistence and severity of his lower back pain or its effect on daily functioning. *See* Doc. 9-3 at 17-20. The ALJ acknowledged Streeter's testimony that he could not stand for prolonged periods; that his legs, arms, and feet become numb and shaky; that he often needs assistance with tasks such as putting on his socks and shoes or getting in and out of the shower; and that he could not prepare full meals because he

9

could not stand long enough to do so. *Id.* at 17. The ALJ further noted Streeter's reports of dizziness and shakiness with walking, inability to lift or bend, limited walking tolerance of 30-40 yards followed by a need to rest, foot swelling, balance problems, pain rated at seven out of ten, and alleged cane use for ambulation and stair-climbing. *Id.* at 17-18. These claims were all raised and contrasted with objective medical evidence from the record. *See id.* at 18-22. Streeter's claim that the ALJ omitted or disregarded this evidence is therefore incorrect. The ALJ considered it, and expressly articulated the reasons for his conclusion that, based on the record as a whole, it was not entirely consistent with the available objective medical evidence. *Id.*

Nor did the ALJ ignore, as Streeter contends, the objective evidence produced by his visits to Cooper Green Mercy Hospital. The ALJ repeatedly highlighted his visits to Cooper Green and expressly incorporated those visits in his evaluation of Streeter's subjective pain testimony. *Id.* at 18-19. The ALJ was not required, however, to provide a sentence-by-sentence exegesis of every treatment note. *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record"). It is enough that the substance of the evidence was considered and addressed, which it was.

Streeter further argues that the ALJ improperly "minimized the objective evidence" because a reasonable person could have come to a different conclusion. *See, e.g.*, Doc. 12 at 10-11 (arguing that the objective evidence "clearly documents severe conditions that could reasonably produce" Streeter's pain). But weighing the objective evidence is the ALJ's task, not the Court's. The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Even so, it is not enough for Streeter to show that the objective evidence reasonably could support a conclusion contrary to the ALJ's—it must be demonstrated that the ALJ's opinion *cannot* be reasonably arrived at by the objective evidence. *Crawford*, 363 F.3d at 1158-59.

Because the ALJ considered Streeter's subjective statements in light of all the relevant evidence, articulated specific reasons for discounting his allegations, and grounded those reasons in substantial evidence, Streeter has shown no error warranting reversal.

## II.    RFC Determination

Streeter also challenges the ALJ's RFC determination, arguing that it lacks substantial evidentiary support. Doc. 13 at 13. That argument fails.

An RFC determination reflects the most a claimant can perform in a work setting despite his impairments. 20 C.F.R. §§ 404.1545, 416.945(a). It is based on the entire record, including medical history, laboratory findings, the effects of

treatment, daily activities, and medical opinions. *Id.*; SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996). The RFC determination is reserved to the Commissioner and, at the hearing level, to the ALJ. *See* 20 C.F.R. §§ 404.1526(c), 416.926(c); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). While the ALJ need not discuss every piece of evidence, she must consider the record as a whole and articulate the weight given to probative evidence. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). An RFC determination that satisfies these requirements and is supported by substantial evidence must be affirmed. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

The ALJ met that standard here. After reviewing the entire record, the ALJ found that Streeter could perform a modified range of light work. Doc. 9-3 at 17. Specifically, the ALJ determined that Streeter could occasionally climb ramps and stairs but should avoid climbing ropes, ladders, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; could endure occasional exposure to extreme temperatures, wetness, humidity, and vibration. *Id.* And he can have occasional exposure to pulmonary irritants such as fumes, odors, dusts, gasses, and poorly ventilated areas. *Id.*

In reaching that conclusion, the ALJ conducted a comprehensive review of Streeter's medical record. Streeter began treatment at Cooper Green Mercy Hospital

for his hypertension, diabetes mellitus with neuropathy, lumbar degenerative disc disease, chronic pain syndrome, and obesity. Doc. 9-3 at 18-19. In June 2022, x-rays of Streeter's spine showed no acute lumbar fracture or subluxation but revealed moderate spondylitic changes, multilevel degenerative disc disease, and facet arthropathy. Doc. 9-9 at 8.

Treatment notes from Cooper Green Mercy Hospital show that Streeter primarily managed his lumbar pain with Aleve and was referred to physical therapy. Doc. 9-9 at 61, 65, 92, 95, 103, 115. He exhibited core weakness and was advised to pursue lumbar stabilization. *Id.* at 94. Imaging revealed disc desiccation at L3-L4, and an August 2023 MRI confirmed lumbar degenerative disc disease. *Id.* at 94, 177-78. Streeter reported some limited success from physical therapy. Doc. 9-9 at 91-105, 109-116, 121-132, 136-140, 145-150, 156-161; Doc. 9-10 at 8-29. At no point did Streeter receive surgery for his condition. *See generally* Docs. 9-8, 9-9, 9-10. His pain treatment remained conservative, as he relied on over-the-counter analgesics and Mobic. Doc. 9-8 at 105-106. He was not prescribed narcotics or opioid pain medications on a regular basis. *Id.*

Streeter's other conditions followed a similar course. His hypertension was treated through medication and was generally controlled when he complied with his prescribed regimen. Doc. 9-9 at 51, 151; Doc. 9-10 at 63. The record shows no end-organ damage attributable to hypertension, such as a stroke, heart disease, or kidney

13

dysfunction. His type II diabetes mellitus was initially treated with metformin, which he discontinued due to side effects. Doc. 9-3 at 19; Doc. 9-8 at 106; Doc. 9-9 at 25, 32, 34-35, 37, 43, 45-46, 48-49, 51-54, 60, 62, 64, 66, 87, 89, 107-108, 118-119, 134-135, 142-143, 151-152, 154-155, 168, 183; Doc. 9-10 at 63, 65-66, 68. His A1c remained modest, measured at 6.7 in February 2023. Doc. 9-9 at 60. He did not develop insulin dependence or diabetic organ damage. Doc. 9-9 at 45, 51, 73-74; Doc. 9-10 at 63, 72. His lipid levels were normal, and he was prescribed losartan for nephroprotection. Doc. 9-9 at 60.

The ALJ also considered Streeter's treatment history and compliance. At a September 2022 hypertension follow-up, Streeter reported that he had not taken his medications for two years. Doc. 9-9 at 22. In March 2023, providers again documented uncontrolled blood pressure, prompting medication adjustments. Streeter was prescribed losartan, chlorthalidone, and amlodipine, advised to exercise daily, and counseled on dietary changes that would improve his conditions. Doc. 9-9 at 60-66. He continued to smoke but attempted cessation with nicotine replacement therapy. *Id.* at 60.

State agency physicians independently corroborated the ALJ's RFC assessment. In September 2022 Dr. Andre Fontana reviewed the record and concluded that Streeter could perform light work. Doc. 9-4 at 5-8. He found that Streeter could frequently push and pull; occasionally climb ramps, stairs, ladders,

14

ropes and scaffolds; and kneel, crouch and crawl, and frequently balance. *Id.* at 6. In July 2023, Dr. James Bailey reached a similar conclusion, finding that Streeter could perform light work with only modest variations. *Id.* at 16-18. Dr. Bailey limited Streeter to occasional climbing of ramps and stairs, permitted stooping, kneeling, crouching, and crawling, prohibited climbing ladders, ropes, or scaffolds, and restricted exposure to extreme temperatures, wetness, humidity, vibrations, pulmonary irritants, poor ventilation, and workplace hazards. *Id.*

Clinical examinations further supported those findings. In June 2023, Streeter presented to Cassandra Frieson, C.R.N.P., D.N.P., for a physical examination. Doc. 9-9 at 165. He drove himself to the appointment, and did not arrive with a cane, despite claiming to rely on one. *Id.* at 166. He rated his lumbar pain as seven out of ten but reported that it improved with exercise, ice and heat therapy, and meloxicam. *Id.* Imaging from March 2023 showed degenerative changes in the lumbar spine. *Id.* at 167. On examination, Streeter exhibited normal posture and cooperation, with no tenderness of the neck, shoulders, or paraspinal muscles. *Id.* at 168-169. He demonstrated intact fine motor skills, including forming tight fists, opposing his thumbs to his fingers with only slight difficulty on the left, bringing the backs of his hands together, and writing his name. *Id.* Sensation was diminished to light touch in the arms, legs, and feet, but there were no skin lesions or ulcers. *Id.* During the

appointment, Streeter denied relying on an assistive device for ambulation, and his blood pressure was recorded as normal. *Id.*

Subsequent records likewise reinforce the ALJ's determination. An August 2023 diabetic foot examination noted only occasional numbness and tingling in the feet. Doc. 9-10 at 42. His A1c in July 2023 was 6.5. *Id.* at 57. His diabetes was described as being without complication and not requiring long-term insulin use, and the record shows no exacerbations from prolonged uncontrolled diabetes. Doc. 9-10 at 63.

The ALJ also expressly considered Streeter's the impact of Streeter's obesity. Doc. 9-3 at 20. In January 2024, Streeter was recorded as six feet, four inches tall and weighing 248 pounds, corresponding to a body mass index of 30.19, right at the cusp of obesity, which is usually diagnosed by a BMI of 30 or more. Doc. 9-10 at 60-62. The ALJ further considered Streeter's mental health and found no evidence of a medically determinable mental impairment that imposed functional limitation. Doc. 9-3 at 20-21; Doc. 9-9 at 183-87.

This record amply supports the ALJ's RFC determination. Even if the evidence could support a reduced RFC, that possibility is immaterial. Where, as here, substantial evidence supports the ALJ's determination, the Court must affirm the Commissioner's decision. *Moore*, 405 F.3d at 1213; *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

## CONCLUSION

Substantial evidence supports the ALJ's denial of Streeter's application for disability benefits, and the proper legal standard was applied. The Court therefore **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 3rd day of February, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE